UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| SAMMY FRANCO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. |
| | ) | 5:09-CV-179-BG |
| | ) | ECF |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT and RECOMMENDATION

Pursuant to 42 U.S.C. § 405(g), Sammy Franco is appealing the decision to deny him Social

Security disability benefits by Michael J. Astrue, Commissioner of Social Security. The United

States District Judge reassigned this case to the United States Magistrate Judge for all proceedings.

Franco did not consent to the United States Magistrate Judge exercising jurisdiction over the case.

Pursuant to the order reassigning this case, the undersigned now files this Report and

Recommendation. The court has considered the administrative record, the arguments of the parties,

and the applicable law and recommends that the District Court affirm the Commissioner's decision

and dismiss the complaint.

## I.      Statement of the Case

### A.      Procedural History

In May 2007 Franco filed for disability insurance benefits under Title II of the Social

Security Act. (Tr. 64-75). Franco alleged disability due to back and neck injury, carpal tunnel

syndrome, left knee problems, and depression. (*Id.* at 98). The Disability Determination Service

denied Franco's application initially and upon reconsideration. (*Id.* at 31-43). Franco requested a

hearing before an Administrative Law Judge ("ALJ"). (*Id.* at 46-47). After the hearing the ALJ determined that Franco was not disabled and denied benefits. (*Id.* at 7-18). Franco requested review by the Appeals Council, and it denied his request for review. (*Id.* at 1-6). Accordingly, this court is reviewing the ALJ's decision and denial of benefits.

### B. Franco's Testimony

At the hearing Franco testified that he was 47 years old and had a ninth-grade education. (Tr. 22). Franco's last employment was in 2005 as a forklift operator. (*Id.*). Franco stated that he stopped working because he had been struck by a falling cotton-bale while at work. (*Id.*).

Franco explained that when he gets up in the morning he takes his pain medication before taking his daughter to school. (*Id.* at 22-23). He testified that when he gets back home, he takes the rest of his medication, drinks coffee, and fixes himself breakfast, and that during the day he watches television, washes dishes, vacuums, or cleans around the house. (*Id.* at 23). He stated that later on he feeds the dogs and watches more television, and that he also tries to catch-up on sleep because he does not sleep well at night due the pain in his neck and back. (*Id.*). Franco explained that he tosses and turns when he sleeps, and that he sleeps on the bed, recliner, and sofa at different times in the night. (*Id.*).

Franco stated that he was under the care of a pain management specialist, C. Michel Oliva, M.D. (*Id.*). Dr. Oliva gave Franco epidural steroid injections, and Franco confirmed that the injections helped him. (*Id.* at 23-24). Franco also explained that he had complained to Dr. Oliva about numbness in his hands when he wakes up. (*Id.* at 24). Franco claimed that he also experienced numbness in his hands when he was talking on the phone or holding his coffee. (*Id.*).

Franco testified that he was seeing a psychiatrist and that he had told the psychiatrist that he wanted to kill himself because of all the problems he had. (*Id.* at 25). Franco also testified that he was taking medication to treat his depression and that it was helping "quite a bit." (*Id.*).

Franco stated that due to the pain in his neck he can only sit for 30 to 40 minutes at a time before he needs to get up and walk around. (*Id.* at 26). He stated that he can stand for 30 minutes, and with the help of a cane he can walk around the block. (*Id.*).

Franco explained that he does not do household chores every day; he only does them when they need to be done, but sometimes he does not do them if he thinks the work will aggravate the pain in his back. (*Id.* at 26-27). Franco testified that he bathes and dresses himself but has problems putting on a t-shirt because it hurts to move his shoulder. (*Id.* at 27). Franco testified that when he drops something on the floor he has to bend down slowly to pick it up. (*Id.* at 28). Franco stated that he can lift at least ten pounds and that the numbness in his hands goes away when he "works" them and causes blood to circulate in them. (*Id.* at 28-29).

## II.        Standard of Review and Disability Determination Process

This court's "review of the Commissioner's decision is limited to two inquiries: (1) whether the decision is supported by substantial evidence on the record as a whole, and (2) whether the Commissioner applied the proper legal standard." *Franco v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). Substantial evidence is evidence that a reasonable mind might accept as adequate to support a conclusion. *Id.* (quotation omitted). "In applying the substantial evidence standard, the court scrutinizes the record to determine whether such evidence is present, but may not reweigh the evidence or substitute its judgment for the Commissioner's." *Id.* "Conflicts of evidence are for the Commissioner, not the courts, to resolve." *Id.* "The ALJ's decision must stand or fall with the

reasons set forth in the ALJ's decision, as adopted by the Appeals Council." *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000).

Social Security Rulings are agency rulings "published under the authority of the Commissioner of Social Security and are binding on all components of the Administration." *Heckler v. Edwards*, 465 U.S. 870, 873 n. 3, 104 S.Ct. 1532, 79 L.Ed.2d 878 (1984). An agency must follow its own procedures, even if those procedures are more rigorous than what would otherwise be required. *Newton*, 209 F.3d at 459. Should the agency violate its internal rules and prejudice result, the proceedings are tainted and any action taken cannot stand. *Hall v. Schweiker*, 660 F.2d 116, 119 (5th Cir. 1981).

A claimant bears the burden of proving that he suffers from a disability. *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). The ALJ uses a five-step sequential analysis to evaluate claims of disability: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment(s) meets or equals the severity of an impairment listed in 20 C.F.R., Part 404, Subpart P, Appendix 1; (4) whether the impairment(s) prevents the claimant from doing past relevant work; and (5) whether the impairment(s) prevents the claimant from doing any other work. *Perez*, 415 F.3d at 461. The claimant bears the burden of proof on the first four steps. *Id.* At the fifth step, the Commissioner bears the initial burden of proof, but once the Commissioner shows that the claimant can perform jobs in the national economy, the burden shifts back to the claimant to rebut this finding. *Id.*

Before going from step three to step four, the Commissioner determines the claimant's residual functional capacity ("RFC"). *Id.* The RFC "is a determination of the most the claimant can still do despite his physical and mental limitations and is based on all relevant evidence in the

claimant's record." *Id.* at 461-62. The RFC is used at steps four and five of the analysis. *Id.* at 462. Here the ALJ found that Franco was not disabled at step five of the sequential analysis.

## III.    Discussion

Franco argues that the ALJ failed to adequately explain why he chose not to give weight to the opinions of two different physicians in accordance with S.S.R. 96-5p (July 2, 1996). Franco also argues that the ALJ's decision was not supported by substantial evidence because the ALJ failed to consider the combined effect of his impairments.

### A.    S.S.R. 96-5p

Franco argues that S.S.R. 96-5p requires that the ALJ must articulate reasons for rejecting a physician's opinion in accordance with 20 C.F.R. § 404.1527(d). Franco asserts that the ALJ failed to comply with S.S.R. 96-5p when he rejected the opinions of two different physicians, Roger J. Wolcott, M.D., and James Wright, M.D.

"The opinion of the treating physician who is familiar with the claimant's impairments, treatments and responses, should be accorded great weight in determining disability." *Newton*, 209 F.3d at 455. "A treating physician's opinion on the nature and severity of a patient's impairment will be given controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with . . . other substantial evidence." *Id.* (quotation omitted). "The opinion of a specialist generally is accorded greater weight than that of a non-specialist." *Paul v. Shalala*, 29 F.3d 208, 211 (5th Cir.1994).

"The ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion." *Newton*, 209 F.3d at 455 (quotation omitted). "The treating physician's opinions are not conclusive" and "may be assigned little or no weight when good cause is shown."

*Id.* at 455-56. Good cause may permit an ALJ to discount the weight of a treating physician's opinion relative to other experts' opinions where the treating physician's opinion is conclusory; is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques; or is otherwise unsupported by the evidence. *Id.* at 456.

An ALJ is required to consider each of the 20 C.F.R. § 404.1527(d) factors before declining to give any weight to the medical opinions of the claimant's treating physician. *Newton*, 209 F.3d at 456. In addition, the ALJ must consider the findings of a state medical consultant as expert opinion evidence and address those opinions in his decision, and the ALJ must evaluate opinion evidence from state medical consultants using the factors in 20 C.F.R. § 404.1527(d). *See* S.S.R. 96-5p (explaining that 20 C.F.R. § 404.1527 applies to the opinions of reviewing physicians).

However, when there is reliable medical evidence from a treating or examining physician that controverts another physician's opinion, the ALJ may reject the opinion of the physician without performing the detailed analysis required by 20 C.F.R. § 404.1527(d)(2). *See Newton*, 209 F.3d at 453 ("[A]bsent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist, an ALJ may reject the opinion of the treating physician only if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527(d)(2)"). Nonetheless, "[t]he ALJ cannot reject a medical opinion without an explanation." *Loza v. Apfel*, 219 F.3d 378, 395 (5th Cir. 2000).

Finally, A medical opinion should not be equated with an RFC assessment. SSR 96-5p. One reason to keep the distinction is that § 404.1527(d) only applies to medical opinions. *Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003). The regulations explain that a doctor's opinion has no special significance on determinations specifically reserved for the

Commissioner. *Id.* (citing 20 C.F.R. § 404.1527(e)). Specifically, whether a claimant is disabled and RFC assessments are opinions that are reserved for the Commissioner. 20 C.F.R. § 404.1527(e)(1), (2). Thus, the ALJ is not required to give special significance to a physician's opinion on those matters. 20 C.F.R. § 404.1527(e).

### 1. Dr. Wolcott

Franco points to a statement that Dr. Wolcott made on November 13, 2006, where he stated in a letter that Franco was disabled. (Tr. 168). Dr. Wolcott was one of Franco's treating physicians. (*Id.*). Franco argues that the ALJ failed to address this opinion. Dr. Wolcott's statement did not state what Franco could or could not do; instead it was a disability determination which is a decision that is reserved for the Commissioner. 20 C.F.R. § 404.1527(e)(1). Thus, the ALJ could give no weight to the opinion without analyzing it under 20 C.F.R. § 404.1527(d). *Frank*, 326 F.3d at 620. An additional reason for the ALJ disregarding Dr. Wolcott's statement was that on October 2, 2007, he stated that Franco should "get his GED and then pursue job retraining," which indicates that Dr. Wolcott no longer thought that Franco was disabled. (Tr. 235).

### 2. Dr. Wright

Franco contends that the ALJ failed to address the opinion of Dr. Wright in the decision. On December 18, 2007, Dr. Wright, who was a state medical consultant, indicated that Franco had limited reaching in all directions including overhead, limited handling, and limited fingering. (Tr. 342). On July 21, 2008, Dan Berman, M.D., examined Franco and noted that Franco had no musculoskeletal symptoms, normal range of motion, no swelling , and no tenderness. (*Id.* at 353-54). Accordingly, the ALJ did not need to address the opinion of Dr. Wright under the detailed analysis required by 20 C.F.R. § 404.1527(d)(2) because an examining physician provided

reliable medical evidence that controverted Dr. Wright's opinion. *See Newton*, 209 F.3d at 453. Thus, the ALJ did not err by disregarding the opinion of Dr. Wright.

**B.     Combined Effects of Franco's Impairments**

Franco argues that ALJ failed to consider the combined effect of his impairments by disregarding certain pieces of evidence. Franco asserts that the ALJ did not adequately consider his subjective complaints of pain, a magnetic resonance image ("MRI") from November 2007, Dr. Oliva's findings, and the epidural injections for pain. Franco further asserts that the ALJ did not consider his depression when making the RFC assessment. Franco also contends that the ALJ erred in finding that his depression did not meet the 12-month durational requirement. Finally, Franco argues that the ALJ erred by not considering his ability to push or pull when making the RFC assessment.

When determining whether a claimant's physical or mental impairments are of a sufficient medical severity that such impairments could be the basis of eligibility for disability benefits under the law, the ALJ will consider the combined effect of all of the claimant's impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity. 20 C.F.R. § 404.1523. An ALJ may discuss each impairment individually and then state that he considered the combined effect of the impairments to satisfy the mandate of 20 C.F.R. § 404.1523, so long as the ALJ's RFC assessment considers all of the claimant's impairments and is supported by substantial evidence. *See Owens v. Heckler*, 770 F.2d 1276, 1282 (5th Cir. 1985).

In *Owens* the claimant suffered from a back injury, heart condition, high blood pressure, severe pain in his lower back, shortness of breath, and fatigue. *Id.* at 1278-79. The

8

claimant argued, among other things, that the ALJ failed to consider the combined effect of his impairments because the ALJ evaluated each impairment individually. *Id.* at 1282. In the ALJ's decision, the ALJ stated, "'claimant's impairments, taken singly or in combination, do not meet or equal an impairment as defined in the Listing of Impairments, Appendix 1, Subpart P of Regulation 404.'" *Owens*, 770 F.2d at 1282. The 5th Circuit held that the ALJ's statement was not a "rote statement" because there was substantial evidence to support the ALJ's finding that the claimant was not disabled and could perform light work. *Id.* The substantial evidence that the claimant could perform light work was his testimony about what he could still do. *Id.*

The RFC "is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." S.S.R. 96-8p (July 2, 1996). "The RFC assessment must address both the remaining exertional and nonexertional capacities of the individual." *Id.*

Exertional capacity addresses an individual's ability "to perform each of seven strength demands: Sitting, standing, walking, lifting, carrying, pushing, and pulling." *Id.* Each function must be considered separately, but the final RFC assessment may combine activities. *Id.*

Nonexertional capacity includes the claimant's ability to stoop, climb, see, hear, and speak. *Id.* Nonexertional capacity also includes the claimant's mental capabilities. *Id.* "Work-related mental activities generally required by competitive, remunerative work include the abilities to: understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal with changes in a routine work setting." *Id.*

"Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying" small objects. 20 C.F.R. § 404.1567(a). Although sedentary work involves sitting, walking and standing are often necessary to fulfill the job duties. *Id.* However, the regulations do not state that pushing or pulling is required to do sedentary work. *See id.*

"The ALJ's credibility findings as to the debilitating effects of pain are entitled to considerable judicial deference." *Dellolio v. Heckler*, 705 F.2d 123, 127 (5th Cir. 1983). If the uncontroverted medical evidence shows a basis for the claimant's complaints of pain, then the ALJ is required to weigh the objective medical evidence and assign "articulated reasons for discrediting the claimant's subjective complaints of pain." *Abshire v. Bowen*, 848 F.2d 638, 642 (5th Cir.1988). The "absence of objective factors indicating the existence of severe pain–such as limitations in the range of motion, muscular atrophy, weight loss, or impairment of general nutrition–can itself justify" an ALJ's conclusion that the pain is not disabling. *Hollis v. Bowen*, 837 F.2d 1378, 1384 (5th Cir. 1988). The "resolution of conflicts between the subjective evidence and the medical evidence should depend upon the ALJ's evaluation of the credibility of the claimant's complaints of pain." *Id.* at 1385.

In the instant case, at the beginning of the decision the ALJ noted that he was required to consider the combined effect of all of Franco's impairments when making the RFC assessment. (Tr. 11). When the ALJ reviewed Franco's impairments he addressed each of them individually. (*Id.* at 12-15).

The ALJ found that Franco's severe impairments included post right carpal tunnel release, moderate cervical spondylosis, left knee arthralglia, and Hepatitis C. (Tr. 12-14). The ALJ also addressed Franco's depression, but found it was not severe. (*Id.* at 14-15).

As discussed earlier, Franco contends that, because the ALJ failed to consider the following pieces of evidence when addressing his individual impairments, the ALJ did not consider the combined effect of all his impairments: (1) his subjective complaints of pain, (2) epidural injections for pain, (3) a MRI from November 2007, and (4) Dr. Oliva's findings.

The ALJ noted that Franco was receiving pain management treatment and epidural injections. (*Id.* at 13). The records show that the epidural injections reduced Franco's overall pain. (Tr. 247). Moreover, Franco reported that any numbness in his hands went away once he moved them. (*Id.* at 28-29, 247). The ALJ also addressed Franco's subjective complaints of pain. (*Id.* at 16). The ALJ found that the objective medical evidence did not support the conclusion that Franco had disabling pain because the record did not contain evidence of muscle atrophy or gross abnormal neurological deficits. (*Id.*). Accordingly, the ALJ articulated specific reasons for discrediting Franco's subjective complaints of pain. *Hollis*, 837 F.2d at 1384.

In November 2007, Dr. Oliva referred Franco for an MRI and the findings indicated moderate spondylosis, but the MRI did not show did not show symptoms of myelopathy.[1] (Tr. 267, 351). Dr. Oliva stated these findings in a report, and the ALJ referenced the report in his decision. (*Id.* at 14, 351). Moreover, in the same report Dr. Oliva stated that Franco had some weakness in his hand grasp, but normal strength in his deltoids, biceps, triceps, and hand intrinsics. (*Id.*). Accordingly, the ALJ did not ignore the evidence that Franco points out in his brief, and the evidence supports the ALJ's findings.

---

[1] Myelopathy is a disorder of the spinal cord. *Stedman's Medical Dictionary* 1166 (26th Ed. 2006).

With regards to Franco's depression, the ALJ found that it not meet the 12-month durational requirement of 20 C.F.R. § 404.1509 (requiring an impairment to have lasted or be expected to last for a continuous period of 12 months). (Tr. 15). The record reflected that Franco had been prescribed Cymbalta and Elavil[2] as early as September 21, 2006, (*id.* at 165), but Franco reported on November 14, 2007, that he had not been previously treated for mental health problems (*id.* at 110). In September 2008, Franco reported that his mood swings and irritability had subsided. (*Id.* at 414). The evidence in the record is conflicting as to whether Franco met the durational requirement, but "[c]onflicts of evidence are for the Commissioner, not the courts, to resolve." *Franco*, 415 F.3d at 461. Accordingly, the ALJ's finding with regard to the 12-month durational requirement was supported by substantial evidence. *Id.*

Nevertheless, the ALJ still evaluated Franco's depression to assess its severity and found that he had: (1) no limitations in his activities of daily living; (2) no limitations in his social functioning; (3) mild limitations in concentration, persistence, or pace; and (4) no episodes of decompensation that were of extended duration. (Tr. 15). The ALJ then stated that the RFC assessment "reflected" his findings on the degree of mental limitation. (*Id.*).

When the ALJ determined whether Franco's combination of impairments met or medically equaled one of the listed impairments 20 C.F.R., Part 404, Subpart P, Appendix 1, the ALJ stated: "None of the medically determinable impairments as cited meet or equal the level of severity as set forth in the criteria of appropriate Sections addressed within the Listings of Impairments." (Tr. 15). However, the ALJ did not discuss what were the actual combined effects of Franco's impairments and how impairments related to each other. (*See id.*). Furthermore, the

_____

[2] Cymbalta and Elavil are medications used to treat depression.

ALJ did not state the listed impairments in 20 C.F.R., Part 404, Subpart P, Appendix 1, that the ALJ used to determine whether combined effects of the impairments met or medically equaled a listed impairment. (*See id.*). Under *Owens*, however, the ALJ is not required to undertake a detailed analysis of the combined effect of the impairments so long as the RFC assessment considers all of Franco's impairments and is supported by substantial evidence. *See* 770 F.2d at 1282.

In the RFC assessment the ALJ found that Franco could do the full range of sedentary work. (Tr. 15). The ALJ explained that Franco could sit 6 hours out of an 8-hour workday; stand or walk 2 hours out of an 8-hour workday; lift or carry 10 or less pounds; and lift or carry docket files, ledgers, and small tools. (*Id.*). The ALJ did not discuss how the mild limitations in concentration, persistence, or pace affected Franco's ability to perform sedentary work. (*See id.*).

The ALJ's findings with regard to Franco's exertional capacity and his postural and manipulative limitations are supported by the notes of Dr. Berman who reported that Franco had full range of motion in his extremities. (Tr. 354). The ALJ's determination that Franco could perform sedentary work was also supported by the notes of Dr. Wolcott who stated that Franco should "get his GED and then pursue job retraining." (Tr. 235). Moreover, the ALJ's decision was supported by Franco's testimony that he could care for his personal needs. *See Leggett v. Chater*, 67 F.3d 558, 565 n.12 (5th Cir. 1995) (explaining that it was appropriate to consider the claimant's daily activities); (Tr. 22-23). Franco's argument that this court should remand the case back to the ALJ to make findings regarding pushing and pulling is without merit because whether Franco could push or pull is not relevant to his ability to sedentary work. *See* 20 C.F.R. § 404.1567(a) (pushing or pulling is not included in the definition of sedentary work); *Carey v. Apfel*, 230 F.3d 131, 142 (5th Cir. 2000) (explaining that it is not appropriate to reverse "the decision of the ALJ for failure to

fully and fairly develop the record unless the claimant shows that he or she was prejudiced by the ALJ's failure").

Although the ALJ did not discuss the effects of Franco's depression and whether Franco had any mental limitations in the RFC assessment, as previously mentioned, the ALJ stated that his findings when addressing the severity of Franco's depression were "reflected" in the RFC assessment. (Tr. 15). Thus, the RFC assessment included the finding that Franco had mild limitations in concentration, persistence, or pace. The ALJ's finding was supported by substantial evidence because Franco's testimony showed that he could complete tasks around the home. *See Leggett*, 67 F.3d at 565 n.12; (Tr. 22-23).

Considering that Franco did not point to any evidence that the ALJ failed to consider, the ALJ's findings at Step-3 and the RFC assessment were supported by substantial evidence, and a review of the record shows that the ALJ addressed all of Franco's impairments, the district court should find that the ALJ addressed the combined effects of Franco's impairments. *See Owens*, 770 F.2d at 1282 .

## IV.     <u>Recommendation</u>

The district court should find that the Commissioner applied the proper legal standards and that the decision was supported by substantial evidence. Accordingly, the Commissioner's decision that Franco was not disabled and not entitled to benefits should be affirmed and this case should be dismissed. *Franco*, 415 F.3d at 461.

## V.     <u>Right to Object</u>

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file

specific written objections within fourteen (14) days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Serv. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

Dated:          August 3, 2010.

NANCY M. KOENIG
United States Magistrate Judge